IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ALVIN GALUTEN, on behalf of the )
ESTATE OF HORTENSE GALUTEN, )
 )
    Plaintiff, ) NO. 3:18-cv-00519
 ) JUDGE RICHARDSON
v. )
 )
WILLIAMSON MEDICAL CENTER, et )
al., )
 )
    Defendants. )

# MEMORANDUM OPINION

Pending before the Court are a Motion to Dismiss filed by Defendants Williamson Medical Center and Whitley (Doc. No. 42) and a Motion to Dismiss First Amended Complaint filed by Defendants Homoud, Benson, Lux and Sound Physicians (Doc. No. 44). Plaintiff has filed a Response (Doc. No. 54), and Defendants have filed Replies (Doc. Nos. 55 and 56).

# FACTUAL BACKGROUND

Plaintiff is the son and court-appointed Executor of the estate of Hortense Galuten, deceased. He brings this action pursuant to the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, against Defendants Williamson Medical Center ("WMC") and First Call; pursuant to the Affordable Care Act, 42 U.S.C. § 18116, against Defendants WMC, Benson, Lux, Homoud and Whitley[1]; and pursuant to 42 U.S.C. § 1983 ("Section 1983") against Defendants Benson, Lux, Homoud, Whitley, and Sound Physicians. Doc. No. 24.

---

[1] Count II, for violations of the Affordable Care Act, does not mention Defendant Sound Physicians and thus is construed as not being asserted against Sound Physicians despite being brought against three of its alleged employees (Benson, Lux and Homoud).

1

Plaintiff has conceded that his Section 1983 claims are time-barred (Doc. No. 54 at 18), and those claims, brought against Defendants Benson, Lux, Homoud, Whitley, and Sound Physicians will be dismissed.

Plaintiff asserts that on or about June 2, 2016, Hortense Galuten, age 93, was admitted to WMC and diagnosed with the following medical conditions: (1) severe hypernatremia, (2) decreased oral intake, (3) malnutrition, (4) CKD stage IV, (5) leukocytosis, (6) hemoconcentration, (7) hypertension, (8) dementia, and (9) possible parkinsonism. Plaintiff alleges that, from the time she arrived at WMC, Ms. Galuten received substandard care. Plaintiff contends that Defendants failed to stabilize her condition and yet began to take steps to discharge her to another facility. Plaintiff claims Defendants failed to keep him informed of his mother's conditions and medications prior to her release and then, without disclosing vital information to Plaintiff, Defendants released Ms. Galuten for transportation to a rehabilitation facility when her medical condition was unstable and her condition inappropriate for such transportation.

The First Amended Complaint alleges that Defendants placed Ms. Galuten on the gurney for transport in a recklessly restrained position, causing her to aspirate vomit into her lungs and be in acute respiratory distress. Plaintiff contends that Defendants also failed to send Ms. Galuten's medical records with her to the rehabilitation facility—a facility that Plaintiff claims was unequipped to properly care for a patient in his mother's condition. Within hours of her arrival at the rehabilitation facility, Ms. Galuten passed away.

Plaintiff alleges violation of the EMTALA by Defendants WMC and First Call. He asserts that WMC failed adequately to screen Ms. Galuten's emergency medical condition and discharged her in an unstable medical condition; failed to provide appropriate medical care to her; failed to send her medical records with her in the ambulance to the rehabilitation facility; diverted a non-

hospital-owned ambulance away from returning Ms. Galuten to WMC for emergency medical care; and failed to timely and adequately transfer her in a stable condition to another hospital with capability to provide appropriate care for her life-threatening condition.

Plaintiff also alleges that the individual Defendants (Benson, Lux, Homoud and Whitley)[2] provided Ms. Galuten with substandard care because of her age, in violation of Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116. Plaintiff avers that, as a proximate result of Defendants' negligent and/or grossly negligent acts and omissions, Ms. Galuten needlessly suffered an agonizing, degrading and painful death.

## MOTION TO DISMISS STANDARD

For purposes of a motion to dismiss, the Court must take all the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 1950. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations

---

[2] The First Amended Complaint does not mention any specific actions of Sound Physicians, and Plaintiff raises Sound Physicians only in relation to his Section 1983 claim to say that Sound Physicians was acting under color of state law.

that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id*. at 681. The question is whether the remaining allegations – factual allegations, *i.e.*, allegations of factual matter – plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

## EMTALA

As Plaintiff has clarified (Doc. No. 54 at 11-12), his EMTALA claim is alleged against Defendants WMC and First Call only.[3]

The EMTALA[4] provides that all hospitals that participate in Medicare and have an emergency department must meet two requirements: (1) for any individual who comes to the

---

[3] The claim certainly could not have been brought against the individual Defendants in any event, because the EMTALA does not authorize a private right of action against individuals. *Moses v. Providence Hosp. and Medical Centers, Inc.,* 561 F.3d 573, 587 (6th Cir. 2009).

[4] This statute was enacted in order to prevent hospitals from dumping patients who lack insurance to pay for their claims by either refusing treatment or transferring them to other hospitals. *Thornton v. Southwest Detroit Hosp.,* 895 F.2d 1131, 1132 (6th Cir. 1990). In other words, the statute helps to ensure public access to emergency services regardless of ability to pay. *Clemons v. Akron EMT*, Case No. 5:18CV967, 2018 WL 3328864 at * 3 (N.D. Ohio July 6, 2018).

emergency department and requests treatment, the hospital must provide for an appropriate medical screening examination to determine whether an emergency medical condition exists; and (2) if the hospital determines that the individual has an emergency medical condition, the hospital must provide either (A) within the staff and facilities available at the hospital such further medical examination and treatment as may be required to stabilize the medical condition, or (B) for transfer of the individual to another medical facility. *Moses,* 561 F.3d at 579 (citing 42 U.S.C. § 1395dd(b)). Thus, for any individual who seeks treatment in a hospital, the hospital must determine whether an emergency medical condition exists, and if the hospital believes such a condition exists, it must provide treatment to "stabilize" the patient. *Id.*

The statute defines "emergency medical condition" as a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in, among other things, placing the health of the individual in serious jeopardy. 42 U.S.C. § 1395dd(e)(1)(A); *Moses*, 561 F.3d at 579. To "stabilize" within the meaning of EMTALA is to, with respect to an emergency medical condition, provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility. 42 U.S.C. § 1395dd(e)(3)(A). "Transfer" is defined to include moving the patient to an outside facility or discharging her. 42 U.S.C. § 1395dd(e)(4); *Moses*, 561 F.3d at 579.

The EMTALA provides that any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of the EMTALA may, in a civil action against the participating hospital, obtain, for such harm, damages available for personal injury under the

law of the state in which the hospital is located and such equitable relief as is appropriate. 42 U.S.C. § 1395dd(d)(2)(A).

Because the statute refers to an individual who comes "to the emergency department," Defendant WMC argues that any violation of the EMTALA must occur in a hospital's emergency room. Ms. Galuten presented to the emergency department on June 2, 2011, and Plaintiff alleges, among other things, that Defendants failed adequately to screen her emergency medical condition on June 11, 2016, when she had been in the hospital for nine days. Therefore, Defendants maintain, this provision of the EMTALA does not apply. The Court disagrees. The Sixth Circuit Court of Appeals has stated that the EMTALA requires that emergency care be given until the patient's emergency medical condition is stabilized. *Moses*, 561 F.3d at 582 (citing *Thornton*, 895 F.2d at 1135). In *Thornton*, the court said, "once a patient is found to suffer from an emergency medical condition in the emergency room, she cannot be discharged until the condition is stabilized, regardless of whether the patient stays in the emergency room." *Thornton*, 895 F.2d at 1134.

WMC also asserts that it did not violate the EMTALA because the conditions that allegedly were not stabilized before Plaintiff's release were "newly presenting conditions," not the "emergency medical condition" presented when Ms. Galuten came to the emergency room on June 2, 2016. The First Amended Complaint alleges that, on June 11, 2016, nine days after her admission to WMC, Ms. Galuten began suffering from additional medical conditions, including hypoxia, emesis, and abdominal pain. Therefore, Defendant argues, Plaintiff's allegedly non-stabilized conditions at the time of her transfer on June 11, 2016, were "newly presenting conditions" that were not identified, screened or treated when she presented in the emergency room.

WMC asserts that no further EMTALA obligations exist if the initially identified emergency medical condition is stabilized, but WMC does not show that or how Ms. Galuten's initially identified emergency medical conditions were resolved or stabilized. Having *additional* medical conditions could mean that the original conditions were still remaining. In any case, such a showing would involve evidence beyond the pleadings and thus would be inappropriate for a motion to dismiss.

Citing to *Thornton*, the Sixth Circuit stated in *Moses*: "Emergency care must be given until the patient's emergency medical condition is stabilized." *Moses*, 561 F.3d at 582 (emphasis added). The statute itself requires such treatment as may be required to stabilize the medical condition and forbids the patient's release unless her condition has been stabilized. *Id*. (citing 42 U.S.C. § 1395dd). The statute also states that if an individual at a hospital has "an emergency medical condition" that has not been stabilized, the hospital may not transfer the individual. 42 U.S.C. § 1395dd(c). And, the statute defines an "emergency medical condition" as a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in, among other things, placing the health of the individual in serious jeopardy. 42 U.S.C. § 1395dd(e)(1)(A); *Moses*, 561 F.3d at 579. The Court cannot determine whether, on June 11, 2016, Ms. Galuten had an "emergency medical condition," as defined in the EMTALA (whether or not that emergency medical condition included conditions present when she was admitted) without evidence and likely expert testimony, neither of which is appropriate on a motion to dismiss.

The Court finds that Plaintiff has sufficiently alleged his EMTALA claim. Construing the First Amended Complaint in Plaintiff's favor, Plaintiff's many alleged conditions and symptoms well may have overlapped. Indeed, Plaintiff alleges that some symptoms were actually caused by

Defendants (through prescribing Zofran). The First Amended Complaint alleges facts that make plausible the claim that Ms. Galuten suffered from a "medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in, among other things, placing the health of the individual in serious jeopardy." Whether the claim is actually valid is a question for another day. For these reasons, Defendant WMC's Motion to Dismiss Plaintiff's EMTALA claim will be denied.

## AFFORDABLE CARE ACT

Plaintiff also alleges that WMC[5] and the individual Defendants violated the Patient Protection and Affordable Care Act ("ACA"), specifically 42 U.S.C. § 18116, which provides that an individual shall not, on the grounds prohibited in, among other things, the Age Discrimination Act of 1975 (42 U.S.C. § 6101, *et seq.*), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving federal financial assistance. Through this statute, Congress created a private right and private remedy for violations of Section 1557 by expressly incorporating the enforcement provisions of four federal civil rights statutes.[6] *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 848 (D. S.C. 2015); *Briscoe v. Health Care Serv. Corp.*, 281 F. Supp. 3d 725, 737 (N.D. Ill. 2017).

---

[5] Plaintiff alleges this claim against WMC, but he has failed to make any argument opposing WMC's Motion to Dismiss this claim, so the Court considers that he has waived any such argument. In any event, as set forth below, Plaintiff's ACA claim otherwise is subject to dismissal without prejudice in its entirety (as to all Defendants against whom it has been asserted).

[6] Those four civil rights statutes are Title VI (race), Title IX (gender), the Age Discrimination Act (age) and the Rehabilitation Act (disability). 42 U.S.C. § 18116.

Here, Plaintiff alleges that Ms. Galuten was denied proper medical care because of her age. For purposes of Plaintiff's age discrimination claim, the ACA adopts enforcement provisions of the Age Discrimination Act[7], found at 42 U.S.C. § 6101, *et seq; Briscoe,* 281 F. Supp. 3d at 737; *Doe v. Bluecross Blueshield of Tenn., Inc.*, No. 2:17-cv-02793, 2018 WL 3625012, at * 6 (W.D. Tenn. July 30, 2018). If Congress had intended for a single standard to apply to all Section 1557 discrimination claims, repeating the references to the civil rights statutes and expressly incorporating their distinct enforcement mechanisms would have been a pointless and confusing exercise. *Briscoe*, 281 F. Supp. 3d at 739; *Doe*, 2018 WL 3625012, at * 6.

Exhaustion of administrative remedies under the Age Discrimination Act is a prerequisite for jurisdiction. *McVicker v. Hartfield*, No. 2:06-cv-1100, 2009 WL 2431257, at * 10 (S.D. Ohio Aug. 6, 2009) (citing 42 U.S.C. § 6104(e)(2)(B)). A complainant must exhaust his administrative remedies prior to filing a civil action to enforce rights under 42 U.S.C. § 6101. *Belcher v. Ohio Dep't of Human Servs.*, 48 F. Supp. 2d 729, 738 (S.D. Ohio 1999). The Sixth Circuit, in two unpublished opinions, has held that exhaustion under the Age Discrimination Act is a jurisdictional matter, because the Act specifies that "no action shall be brought" unless administrative remedies have been exhausted. *Williams v. Trevecca Nazarene College*, No. 97-5705, 1998 WL 553029, at * 2 (6th Cir. Aug. 17, 1998); *Simmons v. Middle Tenn. State Univ.*, No. 95-6111, 1997 WL 400105, at * 3-4 (6th Cir. July 11, 1997). Plaintiff has not shown that he exhausted administrative remedies,

---

[7] The Age Discrimination Act provides that no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving federal financial assistance. 42 U.S.C. § 6102.

so the Court has no jurisdiction to hear his ACA claims. The ACA claims will be dismissed without prejudice. Therefore, the Court need not address the parties' other arguments related to this claim.[8]

## DEFENDANT FIRST CALL

The Clerk has entered default against Defendant First Call (Doc. No. 58). Accordingly, this Order does not apply to First Call. Plaintiff may file a Motion for Default Judgment against Defendant First Call pursuant to Fed. R. Civ. P. 55(b).

## CONCLUSION

For these reasons, Defendants WMC and Whitley's Motion to Dismiss (Doc. No. 42) will be granted in part and denied in part. All claims against Defendant Whitley will be dismissed. The Motion to Dismiss of Defendants Homoud, Benson, Lux and Sound Physicians (Doc. No. 44) will be granted, and all claims against Defendants Homoud, Benson, Lux and Sound Physicians will be dismissed.

The Section 1983 claims will be dismissed with prejudice as to all Defendants against whom they are asserted, and the ACA claims as will be dismissed without prejudice to all

---

[8] The Court does note, however, that even if it had jurisdiction, the Age Discrimination Act would not authorize it to award monetary damages, because the private cause of action under the Age Discrimination Act is limited to injunctive relief and the recovery of attorney's fees. 42 U.S.C. § 6104(e)(1) (providing for injunctive relief and attorney's fees only); *Steshenko v. Gayrard*, 44 F. Supp.3d 941, 951 (N.D. Cal. 2014) (private right of action created by Age Discrimination Act is limited to injunctive relief and the recovery of attorney's fees); *McVicker*, 2009 WL 2431257, at * 10 (Age Discrimination Act does not authorize recovery of monetary damages); *Long v. Fulton Cty. School Dist.*, 807 F. Supp. 2d 1274, 1287 (N.D. Ga. 2011) (same); *Morris v. Leon N. Weiner & Assoc., Inc.*, Civil Action No. TDC-16-2860, 2017 WL 1169522 at * 3 (D. Md. March 28, 2017) (same). Thus, it appears that a federal court with jurisdiction would be constrained to dismiss Plaintiff's claims for compensatory and punitive damages under the ACA with prejudice. The Court also notes that Plaintiff does not seek injunctive relief, so he cannot state a claim for attorney's fees in connection therewith.

Defendants against whom they are asserted. The EMTALA claim against Defendant WMC remains set for trial on June 2, 2020, as previously ordered.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE