## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

| | | |
|---|---|---|
| **ALVIN GALUTEN, on behalf of the Estate of HORTENSE GALUTEN,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **NO. 3:18-CV-00519** |
| **WILLIAMSON COUNTY HOSPITAL DISTRICT, D/B/A WILLIAMSON MEDICAL CENTER,** | ) ) ) ) | **JUDGE CAMPBELL MAGISTRATE JUDGE HOLMES** |
| **Defendant.** | ) ) | |

---

### MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FILED ON BEHALF OF WILLIAMSON COUNTY HOSPITAL DISTRICT, D/B/A WILLIAMSON MEDICAL CENTER

---

Defendant, Williamson County Hospital District, d/b/a Williamson Medical Center ("WMC" or "Williamson Medical Center"), pursuant to Federal Rule of Civil Procedure 56, comes now and moves this Court for a judgment dismissing Plaintiff's remaining claims against it (limited to EMTALA[1]) because there exists no genuine issue of material fact, and it is entitled to judgment as a matter of law.[2]

In the event that the remaining claims are not dismissed, WMC is entitled to a partial summary judgment finding the Plaintiff's claims are subject to the provisions of

---

[1] "EMTALA" is the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd.

[2] Plaintiff's claims against WMC were limited to EMTALA claims per the Order on Defendants' Motion to Dismiss dated April 9, 2019 (Docket No. 62). Therefore, this Motion for Summary Judgment is specific to only the remaining EMTALA claims.

the Tennessee Governmental Tort Liability Act ("TGTLA") and, therefore, any recovery by the Plaintiff shall not exceed $300,000.00.

## STATEMENT OF THE CASE

### I.    Background

Ms. Galuten, 93 years old, was admitted to WMC on June 2, 2016, and diagnosed with several medical conditions, including severe hypernatremia due to dehydration, decreased oral intake, malnutrition, CKD stage IV, leukocytosis, hemoconcentration, hypertension, dementia, and possible parkinsonism. (Docket No. 24, ¶ 26).    Ms. Galuten's original medical condition revolved around her "failure to thrive and general decline in intake and dehydration," but by June 6, 2016, she developed pancreatitis, acute renal failure, and a critical potassium level. (Docket No. 24, ¶ 28).

Plaintiff claims that rather than stabilizing Ms. Galuten's condition and continuing to administer care, steps were taken to discharge her to another facility. (Docket No. 24, ¶ 47).   On June 11, 2016, Ms. Galuten was transferred to Somerfield Health Center, and after transfer her condition deteriorated rapidly, and she died that evening at approximately 8:59 p.m. (Docket No. 24, ¶ 80).

Alvin Galuten ("Plaintiff" or "Mr. Galuten"), Ms. Galuten's next of kin and executor of her estate, claims that WMC violated the Emergency Medical Treatment and Active Labor Act ("EMTALA") and is strictly liable for the following:   "failure to adequately screen Ms. Galuten's emergency medical condition" prior to transferring her to a rehabilitation facility on June 11, 2016, after a ten (10) day stay at WMC; discharging Ms. Galuten in an unstable condition; failing to provide appropriate emergency medical

care to Ms. Galuten on June 11, 2016; failing to send Ms. Galuten's medical records with her in the ambulance to Somerfield Heath Center; diverting the ambulance Ms. Galuten was being transferred in away from WMC despite knowing Ms. Galuten was in need of emergency medical care; and failing to timely and adequately transfer Ms. Galuten in a stable condition to another facility capable of caring for her life-threatening condition. (Docket No. 24, ¶ 91). Substantively, these claims flow from the inaccurate assumptions and averments that Ms. Galuten was not, on the day of her discharge (June 11, 2016), properly "screened" or evaluated, was not stable for transfer, and was not provided necessary "emergency medical care."

As briefly mentioned in the Plaintiff's First Amended Complaint, Ms. Galuten initially presented to the emergency department at Williamson Medical Center on June 2, 2016, and was evaluated and treated, after which the decision was made to admit Ms. Galuten to the hospital for further evaluation and treatment. (Docket No. 84, Exhibit A, page 2). Ms. Galuten was at Williamson Medical Center for a total of ten (10) days, during which time various medical specialists were involved in her care, including an emergency department physician, various hospitalists, radiologists, a gastroenterologist, and a nephrologist. (Docket No. 84, Exhibit A, pages 3 and 5).[3] These various physicians ordered, performed, or interpreted various tests and radiological studies during the hospitalization, and serial physical examinations were performed by various physicians during her stay and even before she was discharged from the hospital. (Docket No. 84, Exhibit A, pages 3-9). On the very morning of her discharge, Ms.

---

[3]    Hospitalists are physicians who admit patients to the hospital and provide care throughout admission. Gastroenterologists specialize in providing care for issues related to the digestive system, including placing feeding tubes. Nephrologists specialize in providing care for issues related to the kidneys, including determining the need for dialysis.

Galuten was evaluated by hospitalist Levi Benson, M.D., who determined she was medically stable and an appropriate patient for discharge.[4] (Docket No. 84, Exhibit A, page 9). After that evaluation, she was discharged and transported to a rehabilitation facility, Somerfield Health Center, where she died after experiencing an unanticipated vomiting episode and cardiopulmonary arrest. (Docket No. 84, Exhibit A, pages 4 and 9).

## II.    Procedural History

Plaintiff filed his Complaint on June 4, 2018, and an Amended Complaint on August 6, 2018. (Docket Nos. 1 and 24).  The Amended Complaint alleged that WMC was liable for violations of the Emergency Medical Treatment and Active Labor Act ("EMTALA") and Section 1557 of the Affordable Care Act ("Section 1557").  It also included allegations against a WMC employee, Teresa Whitley, R.N., for violations of EMTALA, Section 1557, and 42 U.S.C § 1983. (Docket No. 24).

On August 30, 2018, WMC filed a Motion to Dismiss Plaintiff's claims and Memorandum in Support. (Dockets No. 42 and 43).  On April 9, 2019, this Court dismissed all claims against Teresa Whitley, R.N., and dismissed all claims against WMC, other than the EMTALA claims. (Docket No. 62).

Pursuant to the Initial Case Management Order, Plaintiff was to disclose Federal Rule of Civil Procedure 26 Experts by July 31, 2019, and WMC was to disclose experts

---

[4]    In this setting, an emergency department physician would not be involved in the evaluation and determination of the appropriateness of a patient to be discharged ten (10) days after admission. Generally, emergency department physicians do not have privileges (the authority granted by the hospital) to admit a patient to the hospital or to discharge a patient after an inpatient admission (like Ms. Galuten).  *See* Dr. Kim Declaration ¶ 5.  The practice in Middle Tennessee is for emergency department physicians to transition the care of emergency department patients to other physicians who will actually admit the patient and manage the care of the patient during the inpatient stay.  *Id.*  Many times, such as occurred in this case, hospitalists serve in this role after admitting the patient to the hospital and will provide care up to and through discharge of the patient.  *Id.*

by September 13, 2019 (Docket No. 40, ¶ I). Depositions of Rule 26 Experts were to be completed by November 15, 2019 (Docket No. 40, ¶ I).

Plaintiff failed to timely disclose Rule 26 Experts by July 31, 2019, and instead filed a Motion for an Extension to Disclose (Docket No. 77). Plaintiff was granted an extension until August 6, 2019 to disclose experts, and Defendants were likewise allowed additional time to disclose until September 19, 2019 (Docket No. 79). Despite being granted an extension, Plaintiff failed to disclose any experts.

On August 13, 2019, Williamson Medical Center filed a Motion to Dismiss and moved this Court to dismiss Plaintiff's First Amended Complaint or, in the alternative, to preclude Plaintiff from untimely disclosing experts or expert reports due to his failure to comply with Federal Rule of Civil Procedure 26 (Docket No. 80, page 1). This Motion to Dismiss outlined the longstanding acknowledgement by the Sixth Circuit Court of Appeals regarding the need for expert testimony in EMTALA claims because these cases, as is true here, often involve questions of medical judgment (Docket No. 80, page. 6). The pending Motion to Dismiss also demonstrates that the case should be dismissed since the Plaintiff has no expert witness to support the allegations that Ms. Galuten was unstable at the time of discharge, and no expert witness to establish that her discharge was the cause of her death. (Docket No. 80, page 6).[5]

Plaintiff's Response to WMC's Motion to Dismiss concedes that because he has not disclosed Rule 26 experts, he is precluded from introducing any expert witness testimony in this case. (Docket No. 82).

---

[5]     On August 15, 2019, the Magistrate Judge issued an Order forwarding WMC's Motion to Dismiss to the District Judge for consideration. (Docket No. 81). An Order has not been entered as of the filing of this Motion for Summary Judgment.

WMC submits the below argument establishes there are no genuine issues of material fact and why it is entitled to summary judgment as a matter of law.

<u>**LAW AND ARGUMENT**</u>

**I.    Summary Judgment Standard of Review**

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of material fact when "looking to the record as a whole, a reasonable mind could come to only one conclusion . . . ." *Mickler v. Nimishillen & Tuscarawas Ry. Co.*, 13 F.3d 184, 186 (6th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "The substantive law involved in the case will underscore which facts are material, and only disputes over outcome-determinative facts will bar a grant of summary judgment." *Burd ex rel Burd v. Lebanon HMA, Inc.*, 756 F.Supp.2d 896, 900 (M.D. Tenn. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248).

"When moving for summary judgment the movant has the initial burden of showing the absence of a genuine dispute as to a material fact." *Automated Sols. Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 520 (6th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The burden then shifts to the non-moving party, who must put forth enough evidence to show that there exists 'a genuine issue for trial.'" *Id.* (citing *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004). While a court views the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)

(citations omitted). Rather, the non-moving party must present specific facts proving that a genuine factual issue exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. If the non-moving party fails to provide evidence to support an essential element of his case, the movant can meet his burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the Court. *See Celotex Corp.*, 477 U.S. at 323; *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003).

## II.    EMTALA

EMTALA requires emergency departments and hospitals to screen and stabilize any patient that presents with an emergency medical condition before transfer or discharge. *Roberts v. Galen of Va., Inc.,* 525 U.S 249, 250 (1999). The hospital "must provide for an appropriate medical screening examination within the capability of the hospital's emergency department." 42 U.S.C. § 1395dd(a). If it is determined that an individual suffers from an emergency medical condition, then it must either provide "such treatment as may be required to stabilize the medical condition," or "transfer … the individual to another medical facility." 42 U.S.C. § 1395dd(b)(1)(A) and (B); *see also Moses v. Providence Hosp. & Med. Ctrs., Inc.,* 561 F.3d 573, 583 (6th Cir. 2009) (these obligations can also apply to patients admitted to a hospital).

Congress intended for EMTALA to address "incidents where hospital emergency rooms allegedly, based only on a patient's financial inadequacy, failed to provide a

medical screening that would have been provided a paying patient, or transferred or discharged a patient without taking steps that would have been taken for a paying patient." *Romine v. St. Joseph Health System*, 541 Fed. Appx. 614, 618 (6th Cir. 2013) (quoting *Cleland v. Bronson Health Care Group, Inc.*, 917 F.2d 266, 268 (6th Cir.1990)).

The provisions of EMTALA authorize filing of civil actions against a hospital if a patient suffered personal harm "as a direct result of a participating hospital's violation of" an EMTALA requirement. 42 U.S.C. § 1395dd(d)(2)(A). However, it is the plaintiff's burden to establish that there was an EMTALA violation, and this violation, not the underlying medical condition, caused the alleged harm. *Scott v. Memorial Health Care System, Inc.,* 660 Fed. Appx. 366, 373 (6th Cir. 2016).

### A. Plaintiff Has Failed to Demonstrate That Ms. Galuten's Screening On June 11, 2016 was not Appropriate.

Williamson Medical Center is entitled to summary judgment because the undisputed facts demonstrate that Ms. Galuten was appropriately screened prior to discharge. In the Sixth Circuit, to properly allege an inappropriate screening claim under EMTALA, a Plaintiff must first establish that the hospital acted with an improper motive. *See Burd,* 756 F.Supp.2d at 904 ("This Court will <u>not</u> adopt the 'strict liability' approach, and instead resolves that it is bound by the Sixth Circuit's improper motive approach….")(emphasis added). The *Burd* court also recognized that the improper motive requirement in the Sixth Circuit created a "difficult burden for plaintiff's bringing claims under EMTALA." *Id.* at 905.

Plaintiff has offered only bare allegations that WMC "failed to adequately screen Ms. Galuten's emergency medical condition on June 11, 2016," but fails to point to any

improper motive of WMC. (Docket No. 24, ¶ 91). As explained below, such an omission is fatal and, in this case, such a claim is not supported by the proof before the Court.

EMTALA's screening provision requires a hospital to provide an "*appropriate medical screening examination within the capability of the hospital's emergency department to determine whether or not an emergency medical condition exists.*" 42 U.S.C. § 1395dd(a) (emphasis added). In *Cleland,* the Sixth Circuit interpreted "appropriate" to refer to a hospital's motives, expressing concern that EMTALA not be used as a malpractice statute:

> We believe the terms of the statute, specifically referring to a medical screening exam by a hospital "within its capabilities" precludes resort to a malpractice or other objective standard of care as the meaning of the term "appropriate." Instead, "appropriate" must more correctly be interpreted to refer to the motives with which the hospital acts.

917 F.2d at 272.

Furthermore, an appropriate medical screening "is not meant to require the best possible medical procedure" nor does it "denote[ ], at a minimum, the full panoply of state malpractice law, and at a maximum, include[ ] a guarantee of successful result." *See Estate of Lacko, ex rel. Griswatch v. Mercy Hosp.*, *Cadillac*, 829 F.Supp.2d 543, 549-550 (E.D. Mich. 2011) (quoting *Cleland,* 917 F.2d at 271).

In this case, Plaintiff alleges that WMC violated EMTALA because it failed to screen, evaluate, and treat Ms. Galuten's hypoxia, emesis, and abdominal pain on the date of her discharge (June 11, 2016) and treat her prior to discharge. (Docket No. 24, ¶ 83). However, there is absolutely no testimony whatsoever by which a reasonable juror could conclude, or to otherwise show, the "screening exam" performed by Dr. Benson on the morning of Ms. Galuten's discharge was improperly motivated. Plaintiff simply

has no medical witness or other evidence to contradict the opinions of WMC's experts, both of whom establish the medical care Ms. Galuten received on June 11, 2016 (including the "screening" exam or otherwise ) by Levi Benson, M.D. was appropriate. (Docket No. 84, Exhibits A and B).[6] Even Dr. Benson, in his deposition, testified about the appropriateness of his exam and decision making relating to Ms. Galuten's discharge.[7]

Moreover, Plaintiff has not even **_pled_**, nor are there any facts or medical opinions to support, that the screening exam of Ms. Galuten was **_improperly_** motivated, likely because of the inability to even establish that Dr. Benson's examination and decision was in any way inappropriate. The Declarations of Dr. Kim and Dr. Doering establish that "there is no evidence that Dr. Benson had an improper motive when examining Ms. Galuten, or that his decision to discharge and transfer her was improperly motivated."[8] Instead, Dr. Benson's examination on the morning of discharge was the **_same_** as examinations performed "for other patients like Ms. Galuten who were managed and treated at Williamson Medical Center and other facilities in Middle Tennessee in July 2016."[9] There simply is no proof that Ms. Galuten's screening exam performed by Dr. Benson was anything but appropriate, foreclosing any direct or indirect argument or intimation Dr. Benson's decisions were "improperly motivated."

---

[6]     See also Declarations of Sanford Kim, M.D. and Tracey Doering, M.D. ¶ 7(b) (filed contemporaneously with the filing of WMC's Motion for Summary Judgment).

[7]     Fed. R. Civ. P. 30(b)(6) Deposition of Levi Benson, M.D. (130:20-139:4) (cited excerpts filed contemporaneously with the filing of WMC's Motion for Summary Judgment).

[8]     Declarations of Sanford Kim, M.D. and Tracey Doering, M.D. ¶ 7(e).

[9]     Declarations of Sanford Kim, M.D. and Tracey Doering, M.D. ¶ 7(d).

**B.    Plaintiff Has Failed to Demonstrate that Ms. Galuten had an Emergency  Medical Condition on June 11, 2016, and that she was Unstable for Transfer.**

To trigger a stabilization obligation contained in 42 U.S.C. § 1395dd(b), Plaintiff must show that the hospital had actual knowledge that an emergency medical condition existed. *Moses v. Providence Hosp. & Med. Ctrs., Inc.,* 561 F.3d 573, 585 (6th Cir. 2009) (*citing Roberts ex rel Johnson v. Galen of Virginia, Inc.,* 325 F.3d 776, 786 (6th Cir. 2003).  In *Moses*, the Sixth Circuit expressly stated that even "if [hospital staff members] do not believe an emergency medication condition exists because they wrongly diagnosed a patient, EMTALA does not apply." 561 F.3d at 585.  Therefore, only actual knowledge of an emergency medical condition is required to trigger a duty to stabilize a patient.

An "emergency medical condition" is a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in, among other things, placing the health of the individual in serious jeopardy. 42 U.S.C. § 1395dd(e)(1)(A); *Moses*, 561 F.3d at 579. To "stabilize" within the meaning of EMTALA is to, with respect to an emergency medical condition, provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility. 42 U.S.C. § 1395dd(e)(3)(A). "Transfer" is defined to include moving the patient to an outside facility or discharging her. 42 U.S.C. § 1395dd(e)(4); *Moses*, 561 F.3d at 579.

The Memorandum Opinion of this Court filed as to WMC's Motion to Dismiss (Docket No. 61, Page 7 ), references that "[t]he Court cannot determine whether, on June 11, 2016, Ms. Galuten had an 'emergency medical condition,' as defined in the EMTALA (whether or not that emergency medical condition included conditions present when she was admitted) without evidence and likely expert testimony, neither of which is appropriate on a motion to dismiss." However, the Court acknowledged that at the Motion to Dismiss stage Plaintiff had sufficiently pled facts making it "plausible" that Ms. Galuten suffered an emergency medical condition, "[w]hether the claim is actually valid [wa]s a question for another day." (Docket No. 61, Page 8). Now, the Court has the opportunity to address this issue and will see no legal or factual basis exists to salvage this claim.

As this Court well knows, the standard to defeat a Motion for Summary Judgment is much different than the standard applicable to the earlier Motion to Dismiss. A non-moving party "may not rest upon [his] mere allegations," but instead must present "significant probative evidence establishing that there is a genuine issue for trial." *Pack v. Damon Corp.,* 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted). Again, the Plaintiff failed to disclose any expert testimony or otherwise provide any evidence to substantiate his allegations or, even more importantly, to refute the unequivocal evidence and testimony produced by WMC's experts. The Declarations of Dr. Kim and Dr. Doering specifically establish that "Ms. Galuten did not have any new, ongoing, or unstable emergency medical conditions that required any additional testing, treatment, or evaluation at the time of discharge on June 11, 2016."[10] Additionally, "[t]he decision

---

[10]     Declarations of Sanford Kim, M.D. and Tracey Doering, M.D. ¶ 7(c).

to discharge Ms. Galuten and have her transported to Somerfield Health Center was appropriate[.]"[11]

Similarly, Plaintiff has no evidentiary support for his assertions that WMC failed to send Ms. Galuten's medical records with her in the ambulance to Somerfield Heath Center or that the hospital somehow "diverted" Ms. Galuten's ambulance away from Williamson Medical Center, despite knowing Ms. Galuten was in need of emergency medical care. (Docket No. 24, ¶ 91). As reflected in the Declaration of Dr. Doering, the medical records from Somerfield Health Center contained numerous medical records from WMC, demonstrating that records had been sent to Somerfield Health Center days before and on the day of Ms. Galuten's discharge from the hospital.[12] There is no question that records from the hospital were provided to Somerfield Health Center.[13] Furthermore, the First Call Ambulance and Somerfield Health Center records are completely devoid of any effort or information that Ms. Galuten was in need of unaddressed emergency medical care, that attempts were made to contact WMC to return her to the hospital, or that the ambulance was in any way diverted away from WMC at any time.[14]

Without any expert or other medical testimony, Plaintiff has no evidentiary support for the bare allegations in the First Amended Complaint that Ms. Galuten was suffering from an emergency medical condition or that she was unstable at the time of discharge. Nevertheless, WMC has come forth with expert testimony to establish,

---

[11]     Declarations of Sanford Kim, M.D. and Tracey Doering, M.D. ¶ 7(d).
[12]     Declaration of Tracey Doering, M.D. ¶ 7(f).
[13]     Declaration of Tracey Doering, M.D. ¶ 7(g).
[14]     Declaration of Tracey Doering, M.D. ¶ 7(h).

through competent medical proof, Ms. Galuten was ***not*** suffering from an emergency medication condition and ***was*** stable for discharge on June 11, 2016. This deficiency in Plaintiff's proof cannot be more obvious.

**C.    Plaintiff Has No Expert Testimony to Establish the Element of Causation and Will Not Be Able to do so at Trial.**

Even assuming that Plaintiff was able to somehow prove that WMC failed to screen, evaluate, and stabilize Ms. Galuten prior to transfer, Plaintiff's claim still fails because he does not have expert testimony to link any alleged EMTALA violation to Ms. Galuten's death. The Sixth Circuit has acknowledged the need for expert testimony in these types of EMTALA claims since they oftentimes bring into question medical judgment. *Smith v. Botsforth General Hospital,* 419 F.3d 513, 519 (6th Cir. 2005); *see also e.g., Burd,* 756 F. Supp.2d at 903.

In keeping with that longstanding principle, WMC retained and disclosed medical experts to address the "medical judgment" and the other medical issues in this case, such as the inherent "causation" element of any EMTALA claim. The Declarations of Dr. Kim and Dr. Doering explain that "Ms. Galuten suffered a cardio-pulmonary arrest hours after her transfer to Somerfield Health Center, most likely from aspiration of emesis."[15] "This catastrophic event was not foreseeable and could not have been avoided even if Ms. Galuten had remained at Williamson Medical Center on June 11, 2016."[16] "The decision to discharge or the actual discharge and transport of Ms. Galuten did not cause or contribute to her death."[17] Again, the Plaintiff failed to disclose

---

[15]    Declarations of Sanford Kim, M.D. ¶ 7(f) and Tracey Doering, M.D. ¶ 7(i).

[16]    Declarations of Sanford Kim, M.D. ¶ 7(g) and Tracey Doering, M.D. ¶ 7(j).

[17]    Declarations of Sanford Kim, M.D. ¶ 7(h) and Tracey Doering, M.D. ¶ 7(k).

any medical expert, much less any medical expert to establish some causal connection relating to the care Ms. Galuten received (or did not receive) at WMC.

The substantive effect of not having any expert medical testimony on "causation" was recently addressed in *Mixon v. Bronson Health Care Group, Inc.,* 2015 WL 1477754 (W.D. Mich. Mar. 31, 2015). In *Mixon*, the plaintiff attempted to pursue an EMTALA claim, arguing the hospital failed to appropriately screen and stabilize her prior to discharge, and as a result she suffered a miscarriage. *Id.* at *3. She offered no evidence that her screening was improperly motivated, offered no evidence that her screening was inappropriate to refute the testimony of defendants' experts, and offered no expert testimony to dispute that her injury was inevitable. *Id.* In ruling on the defendant's Motion for Summary Judgment, the United States Magistrate Judge referenced the difficulty of the plaintiff proving her claims without expert testimony and, specifically, the difficultly in establishing causation without an expert. *Id.* at *5.

As a result of not having an expert, the United States Magistrate Judge (in his Report & Recommendation) found plaintiff failed to introduce evidence that she had an emergency medical condition, and there was no genuine dispute of material fact that she was given a thorough and appropriate examination. *Id.* Plaintiff also did not come forward with any evidence to show that the hospital was improperly motivated during her screening or discharge, as required by the Sixth Circuit. *Id.* at *6. Ultimately, the United States Magistrate Judge concluded that without expert testimony the plaintiff could ***not*** prove (1) that her screening was inappropriate, (2) that she suffered from an emergency medical condition at discharge, or (3) that her condition at discharge caused her injury. *Id.* at *7.

The United States Magistrate Judge noted that **even if** the plaintiff had been able to establish that her screening was inappropriate and that she had an emergency medical condition at the time of discharge, it "is clearly beyond the knowledge and experience of any layperson to determine that anything that was done or not done caused the miscarriage of her baby." *Id.* Without expert testimony the plaintiff had no chance of success at trial; therefore, defendant's Motion for Summary Judgment was recommended to be granted. *Id.* The Report & Recommendation was adopted by the District Judge as the opinion of the Court. *Mixon v. Bronson Health Care Group, Inc.,* 2015 WL 1478020, at *1 (W.D. Mich. Mar. 31, 2015).

The United States District Court for the Middle District of Tennessee has also held that summary judgment is appropriate when the plaintiff cannot establish a causal link between the alleged EMTALA violation and the plaintiff's injury by competent expert testimony. *Cisneros v. Metro Nashville Gen. Hosp.,* 2013 WL 6145722, at *6 (M.D. Tenn. November 20, 2013). In *Cisernos*, the Court held that plaintiff's expert disclosure did not create a genuine issue of material fact because there was no opinion offered that the alleged EMTALA violation caused the plaintiff's claimed injury. *Id.* The Report & Recommendation was adopted by the District Judge as the opinion of the Court. *Cisneros v. Metro Nashville Gen. Hosp.,* 2013 WL 6731819, at *1 (M.D. Tenn. November 20, 2013).

Like the plaintiffs in *Mixon* and *Cisernos*, the Plaintiff **cannot** meet his burden of proof without expert testimony to show (1) Ms. Galuten was inappropriately screened on June 11, 2016, (2) Ms. Galuten was unstable for discharge, or (3) Ms. Galuten's death was caused as a result of her discharge. It is simply "beyond the knowledge and

experience of any layperson" to opine that Ms. Galuten's death was caused as a direct result of her discharge from WMC or any purported violations of EMTALA. Even though Plaintiff did not disclose *any* expert witnesses, WMC has, as outlined above, come forth with expert testimony refuting each of these necessary elements of the Plaintiff's sole remaining claim, including the fact that Ms. Galuten's death was not related to the decision to discharge her on June 11, 2016.[18]

## III. Even If All Remaining Allegations Against WMC are not Dismissed, Damages Are Limited Pursuant to the Tennessee Governmental Tort Liability Act.

If the Court does not dismiss the Plaintiff's EMTALA claims, WMC is still entitled to a partial summary judgment on the application of the Tennessee Governmental Tort Liability Act ("TGTLA") to this case. WMC is owned and operated by Williamson County, Tennessee, and, therefore, damages are subject to the limitations within the TGTLA. The TGTLA defines the phrase "governmental entity" as

> any political subdivision of the state of Tennessee including, but not limited to, any…development district created and existing pursuant to the constitution and laws of Tennessee, or any instrumentality of government created by any one (1) or more of the named local governmental entities or by an act of the general assembly.

Tenn. Code Ann. § 29-20-102(3)(A).

WMC, formerly known as Williamson County Hospital, was "created and established on behalf of Williamson County, Tennessee" in 1957 by Williamson County's Private Acts of 1957. *Williamson County Hospital*, PRIVATE ACTS OF 1957, ch. 107 (1957), *in* PRIVATE ACTS OF WILLIAMSON CTY., TENN., UNIV. OF TENN. INST. FOR PUB.

---

[18]    Declarations of Sanford Kim, M.D. ¶ 7(h) and Tracey Doering, M.D. ¶ 7(k).

SERV. 152, 152 (rev. ed. 2012).[19]   Further, the Supreme Court of Tennessee has already recognized WMC to be a governmental entity subject to the TGTLA. *See Cunningham v. Williamson Cty. Hosp. Dist.*, 405 S.W.3d 41, 42-43 (Tenn. 2013).

The TGTLA codifies the common law rule that "all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." Tenn. Code Ann. § 29-20-201(a); *Cisneros,* 2013 WL 6145722, at *7;[20] *Kiser ex rel. Austen v. Jackson-Madison Cty. Gen. Hosp. Dist.*, 2002 WL 1398543, at *2 (W.D. Tenn. May 3, 2002). The statute details specific exceptions to the general rule, including some instances in which a negligent act or omission by a governmental employee during the scope of his employment proximately causes an injury. Tenn. Code Ann. § 29-20-205.  However, the statute retains immunity for the governmental entity where the injury was caused by certain negligent acts or omissions. Tenn. Code Ann. § 29-20-205(1)–(9).

Pursuant to the TGTLA, if immunity is waived and the governmental entity held liable for the negligence, the plaintiff's recovery is limited to the statutory caps outlined in Tenn. Code Ann. § 29-20-403, unless there has been an express waiver of such limits. Tenn. Code Ann. § 29-20-404(a).  The statutory cap for bodily injury or death of any one (1) person is limited to $300,000.00. Tenn. Code Ann. § 29-20-403(b)(4).

The Sixth Circuit has recognized that claims for personal injury pursuant to EMTALA are subject to state law caps on damages. *Smith v. Botsford General Hospital,*

---

[19]        *See also* Fed. R. Civ. P. 30(b)(6) Deposition of Levi Benson, M.D. (139:5-19).

[20]        *Cisneros,* 2013 WL 6731819, at *1 (Order Adopting the Report and Recommendation of the Magistrate Judge).

419 F.3d 513, 517 (6th Cir. 2005). Similarly, a sister District Court has specifically found that the limitation of damages provision of the TGTLA is applicable to EMTALA claims because these provisions do not directly conflict. *Kiser,* 2002 WL at *8. In *Kiser*, the court held that "the TGTLA's limitations of damages provision does not prevent the bringing of an EMTALA claim. It merely limits the amount of damages that a plaintiff can receive." *Id.* at *6. More recently, the United States District Court for the Middle District of Tennessee affirmed that the TGTLA limited a defendant's liability when a lawsuit sounds in EMTALA. *Cisneros,* 2013 WL 6145722, at *7.[21] The analysis and ultimate application of the TGTLA damages caps to EMTALA claims in these cases demonstrate that the Plaintiff's claim, in this case, is limited to, as a maximum, $300,000.00.

There are no genuine issues of material fact that the TGTLA applies to claims against WMC, including EMTALA claims. In turn, Williamson Medical Center is at least entitled to a partial summary judgment limiting any ultimate award of damages in this case to not exceed $300,000.00.

## Conclusion

Plaintiff cannot prove his case without expert testimony, and the evidence before the Court unquestionably refutes Plaintiff's claims. The undisputed facts and expert opinions outlined above establish WMC complied with EMTALA and Ms. Galuten's unfortunate death was not caused by the care she received (or did not receive) while a patient at WMC. There simply is no genuine issue of material fact and WMC is entitled to a judgment dismissing the Plaintiff's claims, as a matter of law. If the Court does not

---

[21] *Cisneros,* 2013 WL 6731819, at *1 (Order Adopting the Report and Recommendation of the Magistrate Judge).

dismiss the Plaintiff's claims, Williamson Medical Center is still entitled to a partial summary judgment applying the TGTLA damages cap of $300,000.00 to this case.

Respectfully submitted,

**s/Bryan Essary**
**Bryan Essary, #14304**
Gideon, Cooper & Essary, PLC
Suite 1100, 315 Deaderick Street
Nashville, Tennessee 37238
(615) 254-0400
Attorneys for Williamson County Hospital
District, d/b/a Williamson Medical Center

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of December, 2019, a true and correct copy of the foregoing was filed electronically through the Court's ECF system. Notice of this filing will be sent electronically by the Court to all parties indicated on the electronic filing receipt as follows:

      Robert Redman Laser III
      rob@laserlawfirm.com
      Attorney for Plaintiff

      G. Franklin Lemond, Jr.
      flemond@webbllc.com
      Attorney for Plaintiff


                        s/Bryan Essary