UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

| | | |
|---|---|---|
| ALVIN GALUTEN, on behalf of the Estate of HORTENSE GALUTEN, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | NO. 3:18-CV-00519 |
| WILLIAMSON COUNTY HOSPITAL DISTRICT, D/B/A WILLIAMSON MEDICAL CENTER, | ) ) ) ) | JUDGE CAMPBELL MAGISTRATE JUDGE HOLMES |
| Defendant. | ) | |

## STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, Williamson County Hospital District, d/b/a Williamson Medical Center ("WMC"), pursuant to Federal Rule of Civil Procedure 56, submits the following statement of undisputed material facts in support of its Motion for Summary Judgment:

1. Plaintiff claims that WMC violated the Emergency Medical Treatment and Active Labor Act ("EMTALA") because it failed to screen, evaluate, and treat Ms. Galuten's hypoxia, emesis, and abdominal pain on the date of her discharge (June 11, 2016) and treat her prior to discharge.[1]

   **RESPONSE:**

---

[1] Amended Complaint at ¶ 91 (Docket No. 24).

2. WMC served Rule 26 expert disclosures on September 19, 2019, disclosing two experts to testify in this case: (1) Sanford Kim, M.D. ("Dr. Kim"); and (2) Tracey Doering, M.D. ("Dr. Doering").[2]

**RESPONSE:**

3. On the morning of discharge (June 11, 2016), Dr. Levi Benson's examination of Ms. Galuten ("screening" exam or otherwise) was appropriate.[3]

**RESPONSE:**

4. Based on this examination on June 11, 2016, Dr. Benson determined that Ms. Galuten was stable for discharge and stable for transport to Somerfield Health Center.[4]

**RESPONSE:**

---

[2] Docket No. 79 and 84, Exhibits A and B.

[3] Declarations Dr. Kim and Dr. Doering ¶ 7(b); Fed. R. Civ. P. 30(b)(6) Deposition of Levi Benson, M.D. (136:9-139:4) (cited excerpts filed contemporaneously with the filing of WMC's Motion for Summary Judgment).

[4] Declarations Dr. Kim and Dr. Doering ¶ 7(b); Fed. R. Civ. P. 30(b)(6) Deposition of Levi Benson, M.D. (136:9-139:4).

5.  Ms. Galuten did not have any new, ongoing, or unstable emergency medical conditions that required any additional testing, treatment, or evaluation at the time of discharge on June 11, 2016.[5]

    **RESPONSE:**

6.  The decision to discharge Ms. Galuten and have her transported to Somerfield Health Center was appropriate, and it was the same decision that was made for other patients like Ms. Galuten who were managed and treated at Williamson Medical Center and other facilities in Middle Tennessee in June 2016.[6]

    **RESPONSE:**

7.  There is no evidence that Dr. Benson had an improper motive when examining Ms. Galuten, or that his decision to discharge and transfer her was improperly motivated.[7]

    **RESPONSE:**

---

[5] Declarations Dr. Kim and Dr. Doering ¶ 7(c).
[6] Declarations Dr. Kim and Dr. Doering ¶ 7(d).
[7] Declarations Dr. Kim and Dr. Doering ¶ 7(e).

8. The medical records from Somerfield Health Center contained numerous medical records from WMC, demonstrating that records had been sent to Somerfield Health Center days before and on the day of Ms. Galuten's discharge from the hospital.[8]

**RESPONSE:**

9. The First Call Ambulance and Somerfield Health Center records are completely devoid of any effort or information that Ms. Galuten was in need of unaddressed emergency medical care, that attempts were made to contact WMC to return her to the hospital, or that the ambulance was in any way diverted away from WMC at any time.[9]

**RESPONSE:**

10. Ms. Galuten suffered a cardio-pulmonary arrest hours after her transfer to Somerfield Health Center, most likely from aspiration of emesis.[10]

**RESPONSE:**

---

[8] Declaration of Tracey Doering, M.D. ¶ 7(f).
[9] Declaration of Tracey Doering, M.D. ¶ 7(h).
[10] Declarations of Dr. Kim ¶ 7(f) and Dr. Doering ¶ 7(i).

11. This catastrophic event was not foreseeable and likely would have occurred even if Ms. Galuten had not been discharged and was still a patient at Williamson Medical Center.[11]

**RESPONSE:**

12. The decision to discharge or the actual discharge and transport of Ms. Galuten did not cause or contribute to her death.[12]

**RESPONSE:**

13. Williamson County Hospital District, d/b/a Williamson Medical Center, formerly known as Williamson County Hospital, was "created and established on behalf of Williamson County, Tennessee" in 1957 by Williamson County's Private Acts of 1957.[13]

**RESPONSE:**

---

[11] Declarations of Dr. Kim ¶ 7(g) and Dr. Doering ¶ 7(j).

[12] Declarations of Dr. Kim ¶ 7(h) and Dr. Doering ¶ 7(k).

[13] Williamson County Hospital, PRIVATE ACTS OF 1957, ch. 107 (1957), in PRIVATE ACTS OF WILLIAMSON CTY., TENN., UNIV. OF TENN. INST. FOR PUB. SERV. 152, 152 (rev. ed. 2012).

14. Williamson County Hospital District came into being in 1957 by a private act of Williamson County.[14]

    **RESPONSE:**

15. Williamson Medical Center is empowered to do business through Williamson County's formation of Williamson County Hospital District, which is why the formal name of the hospital is "Williamson County Hospital District d/b/a Williamson Medical Center."[15]

    **RESPONSE:**

Respectfully submitted,

**s/Bryan Essary**
**Bryan Essary, #14304**
Gideon, Cooper & Essary, PLC
Suite 1100, 315 Deaderick Street
Nashville, Tennessee 37238
(615) 254-0400
Attorneys for Williamson County Hospital
District, d/b/a Williamson Medical Center

---

[14] Fed. R. Civ. P. 30(b)(6) Deposition of Levi Benson, M.D. (139:5-14).

[15] Fed. R. Civ. P. 30(b)(6) Deposition of Levi Benson, M.D. (139:14-16).

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of December, 2019, a true and correct copy of the foregoing was filed electronically through the Court's ECF system. Notice of this filing will be sent electronically by the Court to all parties indicated on the electronic filing receipt as follows:

Robert Redman Laser III
rob@laserlawfirm.com
Attorney for Plaintiff

G. Franklin Lemond, Jr.
flemond@webbllc.com
Attorney for Plaintiff

                                                              s/Bryan Essary

7
Case 3:18-cv-00519   Document 87   Filed 12/13/19   Page 7 of 7 PageID #: 464