IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ALVIN GALUTEN, on behalf of the ESTATE OF HORTENSE GALUTEN, <br><br> Plaintiff, <br><br> v. <br><br> WILLIAMSON COUNTY HOSPITAL DISTRICT d/b/a WILLIAMSON MEDICAL CENTER, <br><br> Defendant. | NO. 3:18-cv-00519 <br> JUDGE RICHARDSON |

## MEMORANDUM OPINION

Pending before the Court are Defendant's Motion for Summary Judgment (Doc. No. 85, "Defendant's Motion"), to which Plaintiff has filed a response (Doc. No. 97) and Defendant has filed a reply (Doc. No. 101), and Plaintiff's Motion to Exclude Expert Opinions (Doc. No. 99, "Plaintiff's Motion"), to which Defendant has filed a response (Doc. No. 102) and Plaintiff has filed a reply (Doc. No. 103).

## BACKGROUND

This action involves a claim brought pursuant to the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd. Plaintiff is the son, and the court-appointed executor of the estate of, Hortense Galuten. Mrs. Galuten was admitted, via the emergency department, to Williamson Medical Center (WMC) on June 2, 2016. Plaintiff alleges that, from the time she arrived at WMC, Mrs. Galuten received substandard care. Plaintiff contends that

Defendants failed to stabilize her condition and, on June 11, 2016, released her for transportation to a rehabilitation facility, where she died that evening.

The Court previously entered default against Defendant First Call (Doc. No. 58) and dismissed all claims against Defendant Whitley (Doc. No. 61). The Court also dismissed all claims against Defendants Homoud, Benson, Lux, and Sound Physicians, as well as all of Plaintiff's claims under 42 U.S.C. § 1983 and the Affordable Care Act. (*Id.*). The sole remaining claim is Plaintiff's ENTALA claim against Defendant Williamson County Hospital District d/b/a Williamson Medical Center (hereinafter, "Defendant"). The Court also has ruled that Plaintiff is precluded from introducing expert witnesses or expert testimony in this case. (Doc. No. 95).

Because the Motion to Exclude Expert Opinions affects resolution of the Motion for Summary Judgment, the Court will address Plaintiff's Motion first.

## **PLAINTIFF'S MOTION**

Plaintiff asks the Court to exclude the expert opinions of Defendant's two designated experts, Dr. Kim and Dr. Doering, arguing that neither is qualified to render opinions about alleged violations of ENTALA and that their opinions are not reliable.

Federal Rule of Evidence 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Supreme Court has stated that a district court, when evaluating evidence proffered under Rule 702, must act as a gatekeeper, ensuring "that any and all scientific testimony or

evidence admitted is not only relevant, but reliable." *Boatman v. Comcast of the South, L.P.*, No. 3:17-CV-536-PLR-HBG, 2020 WL 714146, at *7 (E.D. Tenn. Feb. 12, 2020) (quoting *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 589 (1993)). The *Daubert* standard "attempts to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other." *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 176–77 (6th Cir. 2009).

Under Rule 702, a proposed expert's opinion is admissible, at the discretion of the trial court, if three requirements are satisfied: (1) the witness must be qualified by knowledge, skill, experience, training, or education; (2) the testimony must be relevant and assist the trier of fact to understand the evidence or to determine a fact in issue; and (3) the testimony must be reliable. *Flowers v. Troxel Co.*, No. 2:18-cv-02639-MSN-dkv at *2 (W.D. Tenn. Feb. 13, 2020); *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008). Rejection of expert testimony is the exception, rather than the rule. *Flowers*, 2020 WL 3525606, at *7; *Boatman*, 2020 WL 714146, at *7. Nevertheless, the party offering the expert has the burden of proving admissibility. *Id.*

In this case, Mrs. Galuten presented to the emergency department at WMC on June 2, 2016 and was admitted to the hospital that same day. Dr. Kim's review of Mrs. Galuten's medical records revealed that from the time of her admission (from the emergency department to the hospital) through her discharge on June 11, 2016, she was not treated by emergency department physicians; rather she was treated by hospitalists/internal medicine physicians, like Drs. Kim and Doering, and other healthcare professionals. (Doc. No. 84-1). This testimony from Dr. Kim is not rebutted.

Dr. Kim stated that he had treated many patients with the same medical conditions Mrs. Galuten experienced before, during, and after her June 2016 stay at Williamson Medical Center, and he opined:

> On June 11, 2016, the day of Mrs. Galuten's discharge, Dr. Benson examined Mrs. Galuten and correctly decided that she was medically stable and that discharge was appropriate. Mrs. Galuten did not have any new, ongoing, or unstable emergency medical conditions at the time of her discharge from Williamson Medical Center. She was a medically stable patient that morning. The decision to discharge and then have her transported to Somerfield Health Center was appropriate and is the same way other patients like Mrs. Galuten were managed and treated at Williamson Medical Center and at the other facilities in Middle Tennessee during June 2016.

(Doc. No. 84-1 at 9).[1]

Dr. Doering stated that she was "extremely familiar" with patients similar in age and having the same medical conditions as Mrs. Galuten, and she opined:

> Based upon my review of the record, including Mrs. Galuten's medical records, Mrs. Galuten was medically stable, no emergency condition existed, and she was an appropriate patient for discharge on June 11, 2016. In the discharging physician's assessment (Dr. Benson), she was deemed stable for discharge and transport to Somerfield Health Center. Based upon my review, I concur with this medical judgment for discharge, and I am of the opinion that his course of treatment was appropriate and in keeping with how other similar patients are managed at Williamson Medical Center and in Middle Tennessee.

(Doc. No. 84-2 at 2).[2]

Plaintiff contends that the opinions of these two witnesses should be excluded because neither has any certification regarding emergency medicine or EMTALA. Plaintiff has not,

---

[1] Dr. Kim also stated that, to a reasonable degree of medical certainty, at the time of discharge, there was no reason to believe that Mrs. Galuten's condition would likely deteriorate and the discharge and transport of Mrs. Galuten to the skilled nursing facility did not cause or contribute to her death. (Doc. No. 84-1 at 11).

[2] Dr. Doering also stated that, in her opinion, the event precipitating Mrs. Galuten's death could not have been avoided, even if Mrs. Galuten had remained at WMC and her discharge and transport to the Somerfield Health Center did not affect the outcome of this patient. (Doc. No. 84-2 at 2).

however, cited any authority for the proposition that these witnesses must be certified in emergency medicine or EMTALA to offer evidence here that is relevant and reliable. Particularly in this case, where the vast majority of the patient's relevant care occurred *after* she left the emergency department and the decision to discharge her (the alleged violation of EMTALA) was made by a hospitalist/internal medicine physician nine days after the patient left the emergency department, the Court is not convinced that testimony from an emergency department doctor is required.

To provide expert testimony, Drs. Kim and Doering must be "qualified."[3] The Court finds that they are, given that it is undisputed that both are licensed to practice medicine in Tennessee, are board certified in internal medicine, and have experience with patient care in hospitals, just as did Dr. Benson, the physician who made the decision at issue. (Doc. Nos. 84-1 and 84-2). Also, to be admissible, their testimony must also be relevant and it must assist the trier of fact. The testimony here fits that bill. It goes to the appropriateness (or lack thereof) of Mrs. Galuten's discharge, the sole remaining issue in this case. And as internal medicine physicians, their explanations and opinions will assist the trier of fact in making the decision at the crux of this case. Finally, their testimony must be reliable, and the Court finds that their opinions are adequately supported, without any indication that they are unreliable or without a factual basis.

Although Plaintiff argues that these physicians opine that Defendant's conduct did not violate EMTALA, neither of these witnesses mentions EMTALA at all or offers an opinion as to compliance therewith or a violation thereof. That issue, and whether any such violation caused

---

[3] Plaintiff correctly points out that a doctor does not qualify as an expert in all medicine by qualifying in one medical field; but, here, these two physicians are qualified in the field of internal medicine to render the opinions they offer in this case.

Mrs. Galuten's death, are questions for the jury,[4] and the testimony of these physicians concerning the appropriateness of Mrs. Galuten's discharge will assist the jury in that determination.

Plaintiff's Motion to Exclude Expert Opinions will be denied.

## DEFENDANT'S MOTION

Defendant argues that Plaintiff has failed to demonstrate that Mrs. Galuten's screening on June 11, 2016, was not appropriate; that Plaintiff has failed to demonstrate that Mrs. Galuten had an emergency medical condition on June 11, 2016, such that she was unstable for transfer; and that Plaintiff has no expert testimony to establish the necessary element of causation for his EMTALA claim. (Doc. No. 86). Defendant also asserts that, even if the remaining EMTALA claim against it is not dismissed, Plaintiff's damages are limited pursuant to the Tennessee Governmental Tort Liability Act ("TGTLA"). Plaintiff has conceded this last fact. (Doc. No. 97 at 13-14).

A. <u>Summary Judgment Standard</u>

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248.

---

[4] *Hughes v. Riverview Med. Ctr., LLC.*, 459 F. Supp. 3d 1029, 1031 (M.D. Tenn. 2020) (whether discharge of patient from hospital was a violation of EMTALA is question for jury); *Ritten v. Lapeer Reg'l Med. Ctr.*, No. 07-10265, 2009 WL 10680140, at *2 (E.D. Mich. Dec. 8, 2009) (issue of causation under EMTALA was question of fact for jury).

On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sol., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 628.

A party asserting that a fact cannot be or genuinely is disputed—i.e., a party seeking summary judgment and a party opposing summary judgment, respectively—must support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). On a motion for summary judgment, a party may object that the supporting materials specified by its opponent "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Upon such an objection, the proponent of the supporting material must show that the material is admissible as presented or explain how it could be presented in a form that would be admissible. *Thomas v. Haslam*, 303 F. Supp. 3d 585, 624 (M.D. Tenn. 2018); *Mangum v. Repp*, 674 F. App'x 531, 536-37 (6th Cir. 2017) (citing Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment).

The court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are

improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### B. EMTALA

EMTALA is not a federal medical malpractice statute. *Hughes v. Riverview Med. Ctr., LLC*, 459 F. Supp. 3d 1029, 1032 (M.D. Tenn. 2020). The impetus for the enactment of EMTALA came from "highly publicized incidents where hospital emergency rooms allegedly, based only on a patient's financial inadequacy, failed to provide a medical screening that would have been provided a paying patient, or transferred or discharged a patient without taking steps that would have been taken for a paying patient." *Id.* (citing *Cleland v. Bronson Health Care Grp., Inc.*, 917 F.2d 266, 268 (6th Cir. 1990)). When a patient arrives at a hospital that has an emergency department, EMTALA imposes upon the hospital three requirements: (1) the hospital must provide for an appropriate medical screening examination; (2) the hospital must provide necessary stabilizing treatment for emergency medical conditions; and (3) the hospital may not transfer a patient who is not stabilized (except in certain defined circumstances). *Hughes,* 459 F. Supp. 3d at 1032 (citing *Romine v. St. Joseph Health Sys.*, 541 F. App'x 614, 618 (6th Cir. 2013)); *see also Perry v. Owensboro Health, Inc.*, Civil Action No. 4:14-CV-00046-JHM, 2015 WL 4450900, at *3 (W.D. Ky. July 20, 2015).

EMTALA provides that anyone who suffers personal harm as a direct result of a participating hospital's violation of EMTALA may, in a civil action against that hospital, obtain damages for that injury. 42 U.S.C. § 1395dd(d)(2)(A).

C. Expert Testimony

On the morning of her discharge, Mrs. Galuten was evaluated by hospitalist and internal medicine physician Levi Benson, who determined that she was medically stable and an appropriate patient for discharge to the nursing facility. Plaintiff alleges that decision was inappropriate and a violation of EMTALA. But Defendant has carried its burden (for purposes of summary judgment) to show, through its own experts' testimony cited above, and through the testimony of Dr. Benson, her treating physician (Doc. No. 91 at 3 (Dep. at 137-38)), that Mrs. Galuten's screening and discharge were appropriate.

The burden, thus shifts to Plaintiff to demonstrate a genuine issue of material fact as to that appropriateness of the discharge. Defendant claims that Plaintiff must have expert testimony to support that allegation. If so, then Plaintiff, lacking expert testimony, cannot raise a genuine issue as to the truth of that allegation. Thus, although the parties argue tangential issues, such as whether Plaintiff must show that Defendant had an improper motive, the viability of Plaintiff's EMTALA claim turns on whether he must have expert testimony to support it; if so, his claim is a non-starter at this point.

Compliance with EMTALA's requirements entails medical judgment,[5] understood only through expert testimony. *Smith v. Botsford Gen. Hosp.*, 419 F.3d 513, 519 (6th Cir. 2005). The

---

[5] As Plaintiff himself notes (Doc. No. 97 at 3), the definition of "to stabilize" in EMTALA means "to provide such medical treatment of the condition as may be necessary to assure, *within reasonable medical probability,* that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility." 42 U.S.C. § 1395dd(e)(3)(A) (emphasis added)).

Sixth Circuit has acknowledged the need for expert testimony inasmuch as EMTALA claims often bring into question medical judgment. *Mixon v. Bronson Health Care Grp., Inc.*, No. 1:13-cv-843, 2015 WL 1477754, at *5 (W.D. Mich. Mar. 31, 2015). Moreover, expert testimony is required when it is clearly beyond the knowledge and experience of a layperson to determine whether anything done or not done by the medical professionals caused the injury[6] (here, death) of the patient. *See Mixon*, 2015 WL 1477754, at *7; *see also Scott v. Mem'l Health Care Sys., Inc.*, 660 F. App'x 366, 372–73 (6th Cir. 2016) (medical expert testimony on causation necessary to distinguish the harm caused by the issue for which plaintiff sought medical care and any harm caused by a subsequent failure of medical care by defendant); *Romine v. St. Joseph Health Sys.*, 541 F. App'x 614, 619 (6th Cir. 2013) ("Lay jurors will usually have difficulty determining to what extent a plaintiff was harmed by the initial injury and to what extent she was harmed by the subsequent inappropriate care.").

As did the courts in *Mixon* and *Romine*, the Court finds that it may theoretically be possible to conclude under certain circumstances that EMTALA has been violated even absent expert testimony,[7] but it is clearly not possible under the circumstances of this case. Mrs. Galuten

---

[6] Plaintiff argues, with justification, that causation is a jury issue. But the jury must be given assistance, through expert testimony under Fed. R. Civ. P. 702, to understand the evidence,. Even the case Plaintiff cites states that the trier of fact in an EMTALA case must consider the prevailing medical standards and relevant expert medical testimony. *See Kiser v. Jackson-Madison Cty General Hosp. Dist.,* No. 01-1259, 2002 WL 1398543, at *5, n.6 (W.D. Tenn. 2002).

[7] *Romine*, for example, cites a case where a pregnant plaintiff was sent home, rather than treated at the hospital, to deliver a stillborn fetus. *Romine*, 541 F. App'x at 619 (citing *Morin v. Eastern Maine Medical Center*, 779 F. Supp. 2d 166 (D.Me. 2011)). Plaintiff relies on *Morin* in arguing that he need not present expert testimony in this case, but the Court finds the facts of this case to be different from *Morin* and more like the case distinguished in *Morin* (779 F. Supp. 2d at 189) and relied upon in *Romine*, where a plaintiff arrived at a hospital with chest pains consistent with a myocardial infarction. Here, Mrs. Galuten arrived at the hospital with the following medical conditions: (1) severe hypernatremia, (2) decreased oral intake, (3) malnutrition, (4) CKD stage

presented to the emergency department with numerous medical conditions and was treated at the hospital for nine days before her discharge. She was clearly discharged on the basis of a physician's medical judgment. Plaintiff has not shown that a jury can determine, without expert testimony, whether Mrs. Galuten received appropriate screening and was appropriately discharged. In addition, Plaintiff has not shown that a jury can determine, without expert testimony, whether Mrs. Galuten's discharge was a proximate cause of her death. These issues are not matters within the common knowledge of lay jurors.

In his response, Plaintiff cites to various of his mother's medical records and gives his own interpretation thereof (Doc. No. 97 at 4-5 and 11). But Plaintiff is not a physician, and he has offered no evidence to show that he is qualified to interpret medical records. A jury will need the assistance of a medical professional to interpret and understand those records.

Plaintiff also relies upon the case of *Runnels v. Rogers*, 596 S.W.2d 87 (Tenn. 1980), in which the court held that it is within the common knowledge of laypersons that if a patient is injured by a piece of wire embedded in his foot, the foot has swollen to the point that the shoe may not be worn, the patient has difficulty walking, there is soreness resulting from probing in an unsuccessful effort to remove it, and the foot is oozing and running, then the wire must be removed. *Id.* at 90. *Runnels* was a Tennessee medical malpractice action, not an EMTALA case. Moreover, the medical issues involved therein —and a common-sense necessary response to such issues— were far more obvious and far less complicated than those in the case at bar. *Runnels* does not support doing away with the requirement of expert testimony in this case. *See also Scott*, 660 F.

---

IV, (5) leukocytosis, (6) hemoconcentration, (7) hypertension, (8) dementia, and (9) possible parkinsonism. (Doc. Nos. 24 at 7 and 97 at 3).

App'x at 373 ("The facts presented in *Runnells* and *Morin*, however, are much more egregious than those in this situation, making those cases readily distinguishable.")

Plaintiff asserts that Defendant's Motion relies almost exclusively on the testimony of its experts. And it is true that Defendant did rely on its experts to meet its initial burden of demonstrating the absence of a genuine issue of material fact as to the EMTALA claim.[8] But once Defendant met that initial burden, the burden shifted to Plaintiff to show, through expert proof, such a genuine issue. In arguing (successfully) that Plaintiff failed to meet his resulting burden, Defendant's Motion relies not upon its *own* experts, but rather upon the *absence* of any experts to testify for *Plaintiff*.

Accordingly, Defendant has shown that Plaintiff, lacking expert medical evidence to show that the screening and transfer of Mrs. Galuten were inappropriate or caused Mrs. Galuten's death, cannot establish the necessary elements of his EMTALA claim. Therefore, there are no genuine issues of material fact at issue, and Defendant is entitled to judgment as a matter of law.

## CONCLUSION

For these reasons, Plaintiff's Motion to Exclude Expert Opinions (Doc. No. 99) will be denied, and Defendant's Motion for Summary Judgment (Doc. No. 85) will be granted. An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[8] This was an entirely appropriate tack for Defendant to take, since its experts' testimony had not been excluded.